You can go ahead and get to the podium and we'll turn the light on and then you can start. And off we go. And by the way, thank you all for being here when the government is otherwise indisposed. Elmore Leonard, we were discussing his writings earlier. This is about an eastern Kentucky family. And the key question here is this family doing what sometimes the drug families in parts of the country do. Was it appropriate to sentence Ms. Mosley for her conduct the way the district court did? The district court committed procedural error and it was procedurally unreasonable to issue her sentence as it did because it relied on an erroneous calculation of her guideline sentence. This is a very complex matter. And again, as you know, she was part of an oxycodone conspiracy. Very bad stuff. Minor player. Her husband ran the operation. They all pled guilty. But, perhaps in a lapse of wisdom, while they are awaiting sentence for the oxycodone, she arranges to have marijuana brought in for her and her husband and her son. Thus, she's now guilty of a contraband charge under 18 U.S.C. 1791. To which she also pleads guilty. Apologizes. This court, I want to say back in the United States versus Griggs, back in the 90s, said, well, you know, when you have two indictments, we're going to sentence them together. You use the 3D1.4 grouping rules. You look at what's the big sentence and then you sort of patch on to it if there is enough significance in the other charge to up it. Here, because the oxycodone case was so serious, a level 26, based on the amount of drugs that were attached to her, this separate charge really would have no impact under the grouping rules as set under 3D1.4. The second charge is an attempt to possess contraband while in prison. Is that the charge itself? That would be, yes, that's what she pled to. Attempt to possess. Not attempt to distribute. No, I don't believe so. Not distributing, but attempt to possess. Not even to possess, not even to possession, but attempting possession. I believe so. And I'm not sure why they chose that structure other than... No, but that's a particular crime, though. Yes. And that's what she's guilty of, and we're trying to determine the similarity of attempted possession of marijuana with conspiracy to distribute oxycodone. Yes, Judge. Despite the general... If this were conspiracy to distribute, it might be a little bit closer, but when it's only an attempt to possess, I think it's kind of important. Yes. However, because the grouping rules first begin in Chapter 3, which, curiously enough, even the preface says the purpose of this is to create incremental punishment for an offense, not to pile onto somebody, so that you have these really small increases, unless under the grouping you've got some really bad guys. For example, if a guy committed two murders, we deal with those totally differently. We don't group them under one murder, but you appropriately would pile on. But here, you'd say first you use this grouping rule, which really is only incremental if they are two significant crimes together. If one's significant and one's not, there's really no impact in the sentence. But further, the rules under 3D1.4 note, by the way, crimes that are sentenced under the 2P chapter, which relates to contraband, those fall outside of grouping completely. And that would make sense, because it is so different. Grouping is for sort of similar and related offenses that are intertwined in some way. But then we go to the 2P section that applies here. And again, this court has said this is a very poorly drafted guideline. There is arguably some ambiguity that would make you think, well, maybe not. That's the question, I think, that was requested as the supplemental brief. Is the oxycodone conspiracy the underlying offense such that 2P guidelines referenced back would put it outside of these general grouping rules? The government now says no. No. And by the way, we would like to adopt the first two paragraphs of the government's brief because it was better written than mine was. So I think we agree on that it just isn't covered under the offense. Now, the government does say, well, but under these general grouping rules, if we go back, it is covered. But it's not, because the general grouping rules would say, first, contraband falls outside of it. It's just too different a charge. And then even in the way you deal with two separate indictments, you look at them, you see, you know, if you look at, does the lesser charge come with it? If it's less than nine levels of the serious charge, you don't even add any offense-level points to it. It's kind of dusted away. Well, 2P1.2C is the cross-reference. And it says, if the object of the offense was the distribution of a controlled substance, apply the offense level from 2D1.1. And I guess the first question is, isn't it possible that the object of the contraband offense was to distribute, even though it was an attempted possession charge? Is that fair? I can understand that off the top of the language, which is the ambiguity. Looking at how the language, when you start to look at the cases that talk about this, they talk about a connection between the offenses. Well, I'm just trying to take it step by step. I mean, would you agree that in this case, under 2P1.2, the court was required to apply the offense level from 2D1.1? Is that cross-reference applicable here in your view or not? To the limited extent that, because under the grouping rules, they also say, when you have a cross-reference, though, that's not meant to act as an adjustment calculation, which would let you put them into the same group. So if you were to, I think actually that's an open question, because you would have the odd situation. If somebody was bringing in 100 kilograms, somebody had succeeded in smuggling in 100 kilograms of marijuana into a prison, it would not seem reasonable that you would give them the level 6. That's the opening calculation under 2P. How much marijuana was involved here? Only 250 grams. Such a small amount. That's why the total calculation on the contraband charges would still be so low, because it was such a small amount of marijuana that was attributed to her. I mean, I do believe she was bringing this in for personal use. Why in the middle of a big drug conspiracy, conviction, and sentencing, I have no idea. But it's a small, small offense. Unless you brought in at least the amount guidelines under 2D, then you'd be treating somebody like her who brings in a small amount with somebody who's really bringing in a huge amount, and that would seem inequitable. Although you could then argue, because 2P talks about underlying offense, and we in the government agree the underlying offense is that possession or distribution charge to which you have added on this contraband charge, because you can do both. There's not a double jeopardy issue there. And then if you were to hit them with a distribution charge, let into the prison, 2D-1 would apply automatically. Given the small amount of marijuana at issue here, does the grouping really affect the base offense level all that much when you group them under 2D-1.1? It should not if they are properly grouped for two reasons. One, if they are separate groups, and then you use that calculation, then still the oxycodone grouping controls, and that's what she would have been sentenced as. So the contraband offense, because it's so small, doesn't have any impact. But even if you were to bring it in and say, let's look at this under the joint amount levels, 2D or 3D, whatever it says, if you're going to group them within even the same group, you've got to calculate the offense level of each first. That's not what was done here. Isn't that the bigger complaint here? Is that the methodology really affects her sentence, that you don't calculate the offense level at the right time? Yes, ma'am, that the calculation under any possible permissible calculation, it was done incorrectly. Again, that's partly because apparently this is – I couldn't find a case where 2P-1 on this point was addressed anywhere. No one's ever looked at this language and how those ambiguities might mislead a district court. Even properly done under one group grouping, you calculate oxycodone conspiracy, you calculate the contraband joint, and then you say, who's got the larger amount? What the court did was it conflated the two, and it took her leadership credit for the marijuana in court, because she called folks, she talked to this guy, here you're bringing marijuana to the jail, can you bring it in for me and go get my other son or brother-in-law, another family member. They took that leadership role and attached that on top of the oxycodone. So that's what really jacked her up. Well, there are two problems here, as I understand you're arguing. Number one, they shouldn't have been grouped. Grouping, we're talking about for purposes of the drug quantity, or am I just way off base there? Is that the upshot of grouping? That's under one possibility, and that would be a factor. It doesn't play a role here, because the quantity of drugs is so low, except the adjustments relating to the marijuana count get added on to adjustments for the oxycodone account, which is high. And that's the other problem I thought you were saying, is that the leadership enhancement should be made to the higher of the two base offense levels before they're grouped. And here you're saying the court grouped and then tacked on the enhancement. Is that your argument? It's really hard, tricky stuff. I apologize. No, it's not your fault. It's the sentencing commission's fault. Yes. Or rather, yes, they tacked on the leadership on top of the oxycodone calculation. Whereas, even if you had grouped them originally, you could only attach it to the marijuana thing, which ups it to, I don't know, a 12 or something. I see. And then, because the 26, and they use grouping, part of the confusion is they use grouping interchangeably. You've got grouping between two different groups. Under either system, that created an over-calculation of her sentence, affecting her substantial rights, because it raised the level and significantly raised the recommended sentence. You don't stray from the numbers you use in your blue brief with having then sent the letter briefs. I mean, you stand by the numbers and the calculations about the jacking up that occurs as a result of the improper grouping and the timing. I guess the improper grouping is about timing. Yes, and arguably, her numbers could be lower if you consider them under Griggs as two separate groups. I mean, you did give to us the numbers that you assess would have been, had it been done properly, she falls at this level and has this range, and she doesn't get tagged as a leader with respect to the oxycodone. Yes, and it would reduce her recommended sentence by about three points. Right. I'm just asking if you stand by those numbers. Those don't change as a result of the question that the court posed. No, ma'am. If anything, they go down. With the five addenda, you notice things keep going up and down. You better sit down while we have some idea what you mean. All right. Thank you, counsel. May it please the court. Ron Walker on behalf of the United States. I'd like to give the court a little more background as to how this case began and the sentences that were imposed and that those sentences were proper and appropriate by the trial court, that the manner in which Ms. Mosley was sentenced in this matter was properly grouped, that the sentence was, the leadership enhancement was proper, and that the trial was proper or the original sentence on the contraband case was continued until it could be properly sentenced with the oxycodone case. The statute, 18 United States Code section 1791, does not include a distribution element to it. It includes possession, attempt to possess, and other language, but no distribution. Yet all of the guidelines and the statute itself refer to enhancements based on distribution. The fact that Ms. Mosley, in this instance, actually did engage in the distribution of marijuana by having initially, while she was on bond for the oxycodone case, initiated having marijuana. So your point, could I move ahead? You're saying that even though she wasn't charged with distribution in adjusting, it's fair to treat it as such. Yes. The guidelines recognize it as such. The statute, again, does not say anything about distribution. Yet the guidelines recognize that it is part of the conduct. When we group offenses, however, do we look at the offenses or do we look at the underlying conduct of the offenses? And you look at the offenses, and in this case, No, okay, you look at the charge and what they pled for, not necessarily what they did. Is that what you're answering? Well, yes, your honor. For grouping purposes. Yes, your honor. And the charge here includes that conduct. The distribution is part of the conduct of 1791 under the guidelines. That's the way the guidelines under 1D.1 and 3D.1.2, that's the way the guidelines interpret that particular statute. So can you walk us through, step by step, how the guideline range in this case should have been calculated based upon what you just said about 1791? Because I know I'm having a hard time with it. And also tell me what section you're relying on, because it appears to me that in your brief you relied on DA, B, and maybe C. You've now abandoned all those arguments, and now you rely on 2D, and I don't think you even argued 2D in your brief, did you? That's correct, your honor. Well, we did. You have not preserved the issue. You've not argued the issue. Why should we decide this on 2D if it's not before us? Well, your honor. Maybe we'll first have the rundown. But I want to know what sections you're talking about. In the rundown. Your rundown. This is 2A, this is 2B. You're not even going to argue those, because you've conceded they don't even apply. Understandably, I will address that matter now. Back to... Do we need a chart? Well, I think it's really fairly simple in the sense that, one, the guideline range for the oxycodone was a level 26, the base offense level. The guideline range for the contraband was a 6, as Mr. Lasavio noted. So, the grouping of those is taken to the highest level. What does that mean? So that means you take the level 26. Okay. So we take, as a result of grouping them? Yes. Why does that matter then? I mean, you already have a 26 because of the oxy. I'm going to explain. Okay, sorry. I don't want to interrupt. And then, under 1B1.5C, you have to take the specific characteristic and apply it to the grouped offense level. So that meant she was a leader. I see. The specific offense level then transfers over to the base offense level. She was a leader of what offense? She's a leader in the contraband offense. Really? That's... Yeah, she got it. She had it brought in. Sure. Okay. Were there other people there that she led? Five other people. She was... The court went through all the factors of the leadership. She never objected to the leadership enhancement. In fact, she acknowledged that she was entitled to a leadership enhancement, one at a three level as opposed to a four level. But the court went through the factors and explained she was a leader or organizer. There were five or more participants that she instructed and directed others. But she concedes this, that she's a leader on the pot business. Yes. But the gripe, of course, is she gets... You're applying that leadership on the 26, the bigger. That's the grouping... Because that's the grouping. That's the grouping under 1B1.5C that when you have a cross-reference, then you apply the cross-reference. Then under 3D1.13 Comment Note 3, the adjustments then go over to the larger base offense level. So that's where you get the 26 plus the 4 is the 30 that the court sentenced her based on. So 2P1.2 says if it involves distribution, which you argue it does, if the object was distribution, which you argue it does... Yes. Apply the offense level from 2D1.1. So we go there and 2D1.1 tells us that we apply the greater of the two offenses. You say that's 26. Correct. So now we're at 26. 1B1.5 says... Well, actually it should be 3D1.3 that refers you to the application of the specific characteristics to the grouped base offense level. 3D1.3 does that. Okay. So where does 3D1.2 come in? Did I miss that? That's getting to what Judge Griffin is asking about. We originally argued that under 3D1.1A, B, and C that these were grouped. We later abandoned that argument. You didn't even argue D, and that's the only thing left. We didn't argue D, but even D isn't applicable here because really the cost reference is the 2P1.1 that specifically says go to the cost reference under the specific guideline. And the specific guideline cost reference is from 2P1.2 to the 2D1.1. That's where 2D1.1 tells you you group them. So you don't even have to consider 3D1.1C. Is that the one that has an exception? Excuse me? Is that the one that has the exception? No. Yes. That's the one that has the exception. Okay. And what does the exception say? And the exception says you use 1D1.1 for drugs, and then it goes down further and says the exclusion includes 2P1.1. So if you refer back to 2P1.1 or 1.2, excuse me, 2P1.2. That's the one that excludes contraband offenses, correct? That's the argument from the government. Okay, and this is a contraband offense, so it's excluded, isn't it? It excludes it in that particular guideline. But you say because it's distribution. Exactly. It gets different treatment. Even though not the offense. The guidelines treat it as a drug offense because it's a related offense. It's the conduct. What does it mean if it excludes contraband and this is not excluded? What would be excluded then? Well, a knife, a cell phone. Those are the kinds of things that are excluded under that provision. Drugs are not because of the impact. Is this the key difference between your argument and your opponent's, the government's? Because we never heard that before. Maybe Judge Griffin, too, was confused about the argument given to us by counsel for the defendant here. I see the argument just changing all the time. We're trying to keep up. I'm not keeping up. I decide the case as it's presented to me. I don't consider new arguments made on the day of oral argument to be preserved arguments, and I only address what's preserved and what's in front of us when the case is submitted. Well, I understand that, Your Honor, but we did make the argument that 2D1.1 was a proper basis for the grouping. You're changing the subsections. Yes. We have always maintained that there were more than one provision that allowed the court to sentence as it did. The question here is whether the district court got it right at the end of the day, not whether you made an argument at one point or another. Correctly. So you're saying we don't even have to reach the question that, frankly, we directed you to answer about 3D1.2? Is that what you're saying? We don't have to go there? You do not have to go there, because, frankly, the answer to the question of the proper sentencing is under 2P1.2. That's the cross-reference that specifically refers you to 2D1.1. And when you go to 2D1.1, it specifically says these are grouped. That's exactly... Which subsection? 2P1.1. I thought you said 1.2 or 1.1? 2P1.2. 2P1.2. That's right. And then 2D1.1. It sends you to 2D1.1. 2P1. Wait a minute. Can we start over on this part? Okay. The sentencing guidelines for the contraband... That is 2P1.2. P as in Paul. Yes. All right. It cross-references you to 2D1.1. Got it. Okay. And... That gets you to 3D... That gets you to 3B. What does 2D1.1 say? Which subsection are you pointing to here? Excuse me? You've said 2P1.2 takes us to 2D1.1. Yes. What subsection of 2D1.1 are you pointing to? It would take you to the C section where you're talking about drug amounts. C, drug quantity table? Exactly. How do I know that we go to that? It's 250 grams or less. This is where I'm losing you. And that would give you a base level of 6. 250 grams of... We're talking about... 3.1. Okay. So what does that... How does that matter? The reason that matters is because it's going to tell you whether you have a 26, a 6, or some other number for the drug quantity. And which of those is higher is going to be the controlling base offense level. Where is the language in the guidelines that says the higher one controls? Does that base offense level apply the greatest in A? Excuse me? You just said whichever is higher controls. Yes. Where do you get that? Where do you get that? You get that from 1B1.5C. Whoa. I mean, we just went from 2P1.2. I understand why 2P1.2 matters. It says go to 2D1.1. Yes. Okay? So now, when I look at 2P1.2, I'm looking at C. I can see the language that matters. I can't figure out the language that matters in 2D1.1. Well, the language that matters in 2D1.1 is simply you're using the drug tables to calculate the base offense level. Okay. And I see my time is up. Well... Talking, please. And then what? So we use them. Show me how we use it here. So then, when you get the two base offense levels, you have to decide which one controls. So you're saying we look under here, and under these quantity tables, we get a 26 for Oxy and we get 6 for Marijuana. Correct. Then what? Then 1B1.5C tells you that you take the higher level. It doesn't say that. It says if the offense level is determined by a reference to another guideline under subsection A or B1 above, the adjustments of Chapter 3 are also determined in respect to the reference. Excuse me. Is that the wrong one? That's the one you guys said in your letter. Well, that's the one that applies to the application of the four-level enhancement. All right. So which part of 1B1.5 are we supposed to be looking at here that tells us go with the 26? Okay. Under, if I may have a moment. Is it D? It's going to be under. Are you able to help, counsel? Are you able to help? Do you know what he's looking for? D says... If you don't, that's all right. Go ahead. The guideline for the grouping of the joint offense levels. That's what we're talking about, correct? I don't know. I'm asking you. Yes. That's, I mean, essentially what we're... Grouped offense levels. The group-based offense levels. We have a 26 and a 6. And a 6. And I'm trying to figure out what happens next. You take the higher one. Okay. On your say-so, but maybe there's something to the guideline. And there is a guideline. There is a guideline. Okay. So... Is it in your brief? It's 3D1.1. Okay. 3D1.1. 1.13. 3D1.13. 3D1.1. What? Yeah. 1.1 and maybe in 3. A3. A3. A3. 3D1.1. A3? Yes. I don't think I've heard about 3D1.1 in this case yet. Yeah. Well, that's the basis of the court combining the two.      You take the higher. 26. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. Well, I don't understand what combining means when we just forget about the 6 and we take the 26. What's the difference? Who cares about the 6? Well, you don't care about the 6 when you combine them, but when you don't know what it's going to be you are concerned about it. And that's what the court had to understand. You have to calculate it is your point. Exactly. So we jettison the 6. I don't know why we're talking about combining it when we jettison it. But so now we have 26. Well, you have the two offenses. Okay. We have the contraband and the oxycodone. Okay. And we have to get one. One base offense level. We have to get one base offense level and one sentence. Okay. One range. Yeah. And the way you do that is you take the base offense level, the higher base offense level of the two, you take the specific characteristics and you combine. Even though the specific characteristics of leadership came only through the contraband. That's correct. But I'll remind the court. This is why we're told it's unfair.  But I'll remind the court. Didn't Mrs. Mosley get two sentences? Excuse me? Didn't she get two sentences? She got a 97-month sentence on the oxycodone. You just told me that this is to get one sentence. She got two sentences. And she got 12 months on. All right. And they're consecutive. So she actually has about nine years of prison time for this. One of their arguments raised in issue two, and they don't spend much time on it, they say that nine years for this woman is substantively unreasonable. And the district judge says, well, it's within the guidelines as I've computed it with all this math and everything else. But tell me, is nine years substantively reasonable irrespective of the guidelines for this woman's conduct? It is. Why? And the reason it is is because of the court's concern about district sentences. Okay, that also concerns me. The district judge wanted to sentence her like her husband. But her husband was clearly the leader of this distribution ring for the oxycodone. And she wasn't. She was a minor player in that, wasn't she? Well, no, she was not a minor player. That's a mischaracterization. Well, she was only involved in, what, three of the transactions or whatever the heck it is. She wasn't. She was not the leader. That's true. But she was not a minor player. She is being now sentenced as if she were. And the judge said, I want this woman to be sentenced the same as her husband. Is that right? No, he didn't say he wanted her sentenced the same as because her husband received 160 months. And her son received 83 months. And in the scheme of this conduct, the son was the lesser of the three. The mother was the second most culpable. And the husband was the most culpable. And that's the sentence that were imposed. That the court considered all the facts of the case and all the relevant conduct of the individuals and sentenced them accordingly. Your time is long expired, and we did ask you to stay. But I want to ensure that Judge Griffin's question has been answered before you sit down. I mean, is this conduct worth nine years in prison, her conduct? Well, Your Honor, I think. That seems like a long sentence to me. When a person has been engaged in drug conduct that has been pervasive in that particular area and then is on bail for that offense, and not only continues to violate the law, but does so in a manner that jeopardizes law enforcement officers in the correctional facility, other inmates, the court is entitled to take all those factors into consideration in imposing an appropriate sentence. And that's exactly what this court did. Let me real quick. Mr. Rucker, go ahead. Really quick, because we got sort of on a somewhat different issue. You said we apply the specific offense characteristics to the 26. Correct. What do you mean? What is specific offense characteristics? That is the leadership role. You apply that. And 3D, which section is it that says you apply the specific offense characteristics to the 26? You go to 3B1.1A, and then 3D1.3, common three. 3D1.1A. And then what? 3D1.3, common note three. Why are we looking at 3D1.3? I guess we can look it up. So you're saying 3D1.1A is the one that says apply this? 3B1.1A is the specific offense conduct. 3B1, that's the leadership conduct. Correct. What's the one that says apply the leadership conduct, i.e., specific offense characteristics to? 3D1.3, comment note three. How about is there a guideline as opposed to a comment? Well, I think that 3D1.3. Okay. All right. All right. Thanks for your patience. No, thank you, Your Honor. All right, Mr. Walker. Thank you. You know, I hope this does not rub your walk up to go to tax school for relief from these intricacies. And, again, I would submit this is in part the way these guidelines were written. A couple of points. One, the provision which deals with how you calculate, if you're grouping offenses into one group, 3D1.3 and its commentary talks about how you do that. We don't concede. In fact, our argument in the brief is they should not have been put into one group, and that was erroneous. But if you do calculate it, you still calculate the entire offense level of each count separately. Now I need to ask you because it is you who argues that 2P1.2 should exclude this contraband offense, and we're told by Mr. Walker that that's correct except where the other offense is also drugs and if it's a knife. What about that argument? Yes, and this, again, I wish I had made a chart. I wish you had, too. Yes, I will. I will move next because it is. The first issue was, as you asked for in the supplemental briefs, does the provision regarding underlying offense pull this in so that you do the grouping? And we both agree it doesn't. And we have, again, 3D1. But Mr. Walker plainly told us that you go ahead and you don't exclude, as 2 says, when it's drugs. You disagree? Ah, well, then he goes down to this cross-reference. We put that provision aside. We agree that doesn't bring it in, and they say this cross-reference brings it in. What's unique about 1791 is it makes a distinction between alcoholic beverages, marijuana, controlled substances, and narcotics. So you can argue that cross-reference, if it refers to controlled substances, must refer to controlled substances as prohibited by 18 U.S.C. 1791. Since marijuana is excluded, it doesn't reference it back. If we assume for argument, though, it does reference it back. If you look at 2D and its rules, they then reference back to 3D, which then excludes 2P. So you have this infinite loop that says, go here, but don't count this. It keeps going back. So it offers no guidance. It offers nothing which says, this is how you should do this, that you should group these two charges together. The only way you can interpret this is to go back, and forgive me because I did not cite in my brief, U.S. v. Griggs, 47 Fed 3rd 827. Everyone's absolved for not citing stuff in briefs in this case. I'm just kidding. I'll take that as law of the case. I'm just kidding. Again, I apologize. You say, what's the right rule? What is the proper action? And here, if it's two separate indictments, two separate crimes that otherwise have no relation, you group them under this different rule, 3D. But I mean, when you say no relation, of course, they both involve drugs. I don't know what the difference is between narcotics and controlled substance. Okay. They both involve drugs. Yes. So unrelated, really, are they? Well, a small amount of marijuana, oxycodone conspiracy. All right. You can have separate drug conspiracies, but one thing that they talk in the grouping rules, who's the victim? We say that drugs are, the victim is societal interest, even though oxycodone kills a lot of folks. But the victim in the contraband case is the institution. You have compromised the security of it to whatever degree. So even under the grouping rules, they would not group together. But we also say if you do group them, it's still miscalculated, because the grouping rules are designed to reduce the sentence. Thank you for your comments. All right. Thank you, sir. Thank you very much. The Court has your matter. If we ever sort it out, you'll get an opinion. It's not that I'm bringing you to the water to get an opinion, Your Honor. Would you like a couple of minutes more time? Well, let us confer a moment. We'll let you know if we do. If we do, we'll send it to you. All right. Thank you.